In re TIC UNITED CORP., Debtor.

**John H. Litzler, Chapter 7 Trustee, Plaintiff,**

v.

**CitiCapital Commercial Corporation and CitiCapital Commercial Leasing Corp., Defendants.**

**Bankruptcy No. 00–37234–SAF–7. Adversary No. 03–3482.**

United States Bankruptcy Court, N.D. Texas, Dallas Division.

Dec. 11, 2003.

---

**2.** The Deceptive Trade Practices Act does not     require a similar element for a recovery.

Peter C. D'Apice, Andrews & Kurth LLP, Dallas, TX, for Plaintiff.

Michael P. Cooley, Gardere, Wynne & Sewell, Dallas, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER

STEVEN A. FELSENTHAL, Chief Judge.

On July 3, 2003, John H. Litzler, the Chapter 7 trustee of the bankruptcy estate of TIC United Corp., the debtor, filed a first amended complaint against CitiCapital Commercial Corporation (CCC) and CitiCapital Commercial Leasing Corporation (CCC Leasing).[1] In the complaint, Litzler alleges four counts. In count one, Litzler seeks to avoid under 11 U.S.C. § 549 and recover under 11 U.S.C. § 550 liens granted to CitiCapital by TIC and $1,764,000 transferred to CitiCapital allegedly without court authorization. In count two, Litzler seeks to declare certain liens invalid and unperfected. In count three, Litzler seeks to surcharge collateral under 11 U.S.C. § 506(c). In count four, Litzler seeks to disallow CitiCapital's claim.

Litzler moves for summary judgment on count one and partial summary judgment on count four. CitiCapital opposes that motion. CitiCapital moves for summary judgment on count one and partial summary judgment on count two. Litzler opposes that motion. The motions do not involve count three. The court conducted

---

1. As did the parties in their pleadings, for ease of reference, the court refers to the entities as CitiCapital.

a hearing on the motions on October 31, 2003.

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, and other matters presented to the court show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Washington v. Armstrong World Indus., Inc.,* 839 F.2d 1121, 1122 (5th Cir. 1988). On a summary judgment motion the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. A factual dispute bars summary judgment only when the disputed fact is determinative under governing law. *Id.* at 250, 106 S.Ct. 2505.

The movant bears the initial burden of articulating the basis for its motion and identifying evidence which shows that there is no genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The respondent may not rest on the mere allegations or denials in its pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### Count One: Unauthorized Post-petition Transaction

■ On November 7, 2000, TIC filed a petition for relief under Chapter 11 of the Bankruptcy Code. By order entered August 12, 2002, the court confirmed TIC's third amended plan of reorganization. The plan never became effective. On March 3, 2003, the court converted the case to a case under Chapter 7 of the Code. From November 7, 2000, until March 3, 2003, TIC was a debtor in possession under and subject to the provisions of the Code.

On January 29, 2003, TIC and CCC entered into a loan agreement. As part of the transaction, TIC granted liens to Citi-Capital on substantially all of its assets. TIC also transferred $1,764,000 to CitiCapital to pay down existing debt to either or both CCC or CCC Leasing. Litzler contends that TIC lacked court authority to make these transfers. CitiCapital counters that the confirmed plan and the confirmation order authorized the transfers.

The Bankruptcy Code provides "the trustee may avoid a transfer of property of the estate (1) that occurs after the commencement of the case; and ... (2)...(B) that is not authorized under this title or by the court." 11 U.S.C. § 549(a). "[T]o the extent that a transfer is avoided under section ...549 ..., the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (1) the initial transferee of such transfer...." 11 U.S.C. § 550(a)(1).

The plan, as confirmed by court order, provided that TIC "shall continue as Debtor–in–Possession under the Bankruptcy Code until the Effective Date" of the plan. Third Am. Plan, § 10.3. The parties agree that the plan never went effective. As a result, TIC acted in the capacity as a debtor in possession when the parties entered the January 29, 2003, credit arrangement. A debtor in possession may only obtain financing upon court authorization under 11 U.S.C. § 364. TIC did not obtain court authorization under § 364 for the January 29, 2003, transaction with CitiCapital. The court did not authorize the credit transaction. As a result, the trans-

fers by TIC to CitiCapital under the January 29, 2003, transaction may be avoided pursuant to § 549.

On January 29, 2003, TIC transferred the $1,764,000 to CitiCapital to pay down a pre-petition obligation to either CCC or CCC Leasing. The plan, as confirmed by the court, did not authorize that transfer at that time. The plan provided that CitiCapital would be "paid per agreement between Debtor and CitiCapital." Third Am. Plan, § 2.3. The agreement, incorporated into the plan, provided that "CitiCapital will be paid $1,764,044 from July to December 2002 from projected cash from CX Trucking." *Id.* That did not happen. The plan does not state that CitiCapital will be paid $1,764,044 in some other fashion or at some other time, should the debtor default. A default by the debtor may be grounds to convert the case to a case under Chapter 7, 11 U.S.C. § 1112(b)(8), but the default does not result in court authorization for TIC to transfer funds on a pre-petition debt to CitiCapital whenever it suits CitiCapital or the debtor. The transfer of $1,764,000 to CitiCapital on January 29, 2003, was not authorized by the court and, therefore, may be avoided under § 549 and recovered under § 550.

CitiCapital observes that the plan requirements could not have been implemented because the confirmation hearing did not occur until August, whereas payments were to have begun in July. That dilemma should have been presented to the court at the confirmation. The plan having been confirmed, CitiCapital cannot now invoke its terms as court authorization for a different payment.

TIC as a debtor in possession assumed the leases that gave rise to this obligation. The court's assumption order incorporated the agreement of the parties to roll lease arrearages into extended lease terms. That order did not provide for the January 29, 2003, transfer. The court also entered an adequate protection order. That order did not provide for the January 29, 2003, transfer. Non-compliance with either court order does not result in court authorization for the transfer of $1,764,000 on January 29, 2003. CitiCapital should have sought relief from the court if it believed the debtor failed to comply with the lease assumption order or the adequate protection order.

CitiCapital invokes other provisions of the plan to support its contention that the court authorized the transfers. Each contention fails by the plain language of the provision invoked. The plan provided:

> CitiCapital will roll shortfall accrued during bankruptcy into Second Note in the approximate amount of $3,344,390 which will accrue interest at 8% and balloon at 1/1/03. The Second Note shall be secured by a lien in all of the assets of CX Trucking subordinate only to Congress Financial and any mezzanine lender. The lien to CitiCapital will elevate to a first lien in such assets on the earlier of the Effective Date or when the Atlas Steel and West Pat Crow divisions are sold and proceeds received by the Debtor.

Third Am. Plan, § 2.3. The parties never executed a secured transaction due by balloon payment on January 1, 2003. Again, plan default does not result in court authorization for the debtor to make a different transfer at a different time.

The plan, as confirmed, further provided:

> On the later of the Effective Date or when the steel divisions are sold, but in no event later than 1/1/03, subject to final approval of CitiCapital, CitiCapital will take out Congress Financial's letter of credit posted for insurance obligations at CX Trucking in the approximate

amount of $7.5 million and will refinance the Retail Note and Second Note.

*Id.* The actions required to be performed by January 1, 2003, did not happen. The failure to perform as required by the plan does not result in court authorization to engage in a transaction at a later date. It results in a plan default.

The plan provided, as a condition to effectiveness, that the debtor secure "exit financing." Third Am. Plan, § 9.1.c. Section 8.3 of the plan provided that the exit financing loan documents will be included in a plan supplement. The plan supplement filed with the court as part of the confirmation process describes an agreement with Congress Financial Corp., not with CitiCapital. Under the terms of the plan, the CitiCapital transaction is not the exit financing authorized as a condition precedent to the effectiveness of the plan.

CitiCapital nevertheless argues that the transactions occurred "precisely as described in the Plan." CitiCapital's Motion for and Brief in Support of Partial Summary Judgment on Trustee's First Amended Complaint, ¶ 30. Of course, however, there is no genuine issue of material fact that none of the transactions occurred as described in the plan. And, for that reason, the debtor did not make the transfers with court authorization.

CitiCapital argues that the confirmation order entered August 12, 2002, ratified the January 29, 2003, CitiCapital transaction. The confirmation order provides that "[a]ll acts undertaken by TIC in the administration of this chapter 11 case or the formulation, negotiation, prosecution, or implementation of the Plan (when implemented) are ratified and approved." Order Confirming Third Amended Plan of Reorganization Proposed by TIC United Corp. and the Official Unsecured Creditors' Committee Dated May 20, 2002, ¶ 9. CitiCapital argues that the transaction was part of

plan implementation. As the plan never became effective, implementation did not occur. Ratification occurs only when implementation occurs.

The order further provides:

TIC, the Creditors Trustee, Board of Directors, and any other Person having duties or responsibilities under the Plan or this Confirmation Order, and their respective directors, officers, . . . are specifically authorized, empowered, and directed to take any and all actions necessary or appropriate to implement, effectuate, and consummate the Plan or the terms of this Confirmation Order and the transactions respectively contemplated in those documents, all in accordance with the terms of the Plan and this Confirmation Order.

Confirmation Order, ¶ 13.

The court authorized TIC to implement, effectuate and consummate the plan in accordance with its terms. The January 29, 2003, transaction was not done in accordance with the terms of the plan. Further, as the plan never became effective, TIC remained a debtor in possession under the terms of the plan. TIC did not obtain court approval to enter the January 29, 2003, post-petition credit transaction. The provisions of the confirmation order do not authorize the January 29, 2003, transaction.

■ On these competing summary judgment motions, the court is not called upon to assess the reasons why the plan provided for certain actions to be taken by certain deadlines or upon certain occurrences. That the court did at confirmation. Once confirmed, the plan's terms are binding. Deviation from them cannot be catapulted into *court* authorization to effectuate a transfer at a different time or under different terms. And, with the case now in Chapter 7, without court authorization, the

transfers of the lien and the $1,764,000 may be avoided.

The court will grant the trustee's summary judgment motion and deny CitiCapital's summary judgment motion on this count.

### Count 2: Declaration of Invalid Lien/Perfection

CitiCapital moves for partial summary judgment on count two of the trustee's first amended complaint. At the hearing on October 31, 2003, the trustee withdrew his opposition to the partial summary judgment. The court will grant CitiCapital's motion for partial summary judgment declaring that CitiCapital has a properly perfected lien. The remaining issue for trial on count two relates to CitiCapital's ability to trace cash proceeds subject to its liens.

### Count 4: Objection and Disallowance of Claim

■ CCC Leasing, as successor in interest to Associates Leasing, Inc., leased tractors and trailers to TIC pursuant to lease agreements. The parties refer to the lease agreements as the Mack Lease and the Marmon Lease. TIC as a debtor in possession assumed both leases under 11 U.S.C. § 365. *See* Agreed Final Order Granting Motion to Compel Assumption or Rejection of Unexpired Leases, entered July 31, 2001. TIC defaulted under the assumed leases. *See* CitiCapital Commercial Corporation's Amended Amended [sic] Motion for Relief from the Automatic Stay, filed April 18, 2003, ¶ 8 ("As of March 15, 2003, unpaid amounts under the Leases, plus the contracted amount for stip-loss value, totals $13,195,940.53."). CitiCapital filed an administrative expense claim of $22,557,567.23, including $13,195,940.53 based on the lease agreements. The trus-

tee objects to CitiCapital's request for that administrative expense.

In its motion for summary judgment, the trustee contends that CitiCapital has overstated its administrative expense under the lease agreements. The trustee requests a partial summary judgment establishing the methodology of calculating CitiCapital's administrative expense with regard to the amount due under the lease agreements. CitiCapital opposes the motion, contending that the trustee misapplies the lease agreements. CitiCapital contends that the administrative expense must be determined at trial. CitiCapital acknowledges that its administrative expense will be credited with amounts received by the sale of the returned vehicles and equipment.

Under the Mack Lease, a closed-ended operating lease, at the end of the term, assuming all lease payments had been made, TIC could have returned the leased vehicles in acceptable condition without any additional liability. The trustee contends that, as a result, the administrative expense should be, at a maximum, the present value of remaining payments under the lease. In addition, the trustee suggests that the value of the returned vehicles exceeds the value that would have existed had the vehicles been used to the end of the lease term. The trustee argues that the unused portion of the vehicle's utility should be deducted from the present value of the remaining lease payments.

TIC did not use the vehicles until the end of the term. Under the Mack Lease, in the event of a default, CCC Leasing could terminate all of TIC's rights under the lease. Upon termination, CCC Leasing could take possession of the vehicles, with all remaining monthly payments becoming due and payable. CCC Leasing could sell the vehicles, with TIC having an obligation to pay the excess, if any, of the

present value at the termination of the lease of the remaining monthly payments over the present value of the Fair Rental Value of the vehicles as defined in the lease. However, as an alternative, at CCC Leasing's option, CCC Leasing could sell the vehicles, with TIC having an obligation to pay the excess, if any, of the Stipulated Loss Value of each vehicle, as defined in the lease, over the net proceeds of a sale.

The options for payment under the assumed lease establish a genuine issue of material fact regarding the determination of any administrative expense concerning the Mack Lease. Because of the options under the lease, the trustee has not established, as a matter of law, the methodology he would have the court employ to calculate damages. The trustee's motion for partial summary judgment concerning the Mack Lease must be denied.

Under the Marmon Lease, a capital lease, TIC financed the residual value of the vehicles in the lease payments. As a result, TIC could buy the vehicles for $1 at the end of the lease term. The trustee contends that CitiCapital's damages should be the present value of the remaining lease payments. Since the price of the vehicles had been capitalized in the lease, the trustee further contends that all of the value of the remaining useful life of the vehicles should be credited against the damages. The trustee argues that the bankruptcy estate loses the value of the capitalized purchase price while CCC Leasing regains the remaining useful life of the vehicles.

The Marmon Lease provides that TIC could terminate the use of a vehicle prior to the end of the lease term. In that event, TIC would be required to pay the remaining payments based on the Adjusted Rental as defined in the lease. In the event of a default, CCC Leasing could sell the vehicles and hold TIC liable for the Adjusted Rental as defined in the lease.

Alternatively, CCC Leasing could re-lease the vehicle. In that event, TIC would be liable for the excess, if any, of the present value of remaining lease payments at termination over the present value of the rentals obtained by CCC Leasing.

As with the Mack Lease, under the Marmon Lease, there is a genuine issue of material fact regarding calculation of damages. Because of the lease provisions, the trustee has not established, as a matter of law, the methodology he would have the court adopt to calculate damages. The trustee's motion for partial summary judgment on the Marmon Lease must be denied.

### Order

Based on the foregoing analysis,

**IT IS ORDERED** that Litzler's motion for summary judgment on count one is **GRANTED** and CitiCapital's motion for summary judgment on count one is **DENIED**.

**IT IS FURTHER ORDERED** that CitiCapital's motion for partial summary judgment on count two is **GRANTED**.

**IT IS FURTHER ORDERED** that Litzler's motion for partial summary judgment on count four is **DENIED**.